UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | No. 6:17-CR-38-GFVT-HAI-7 |
| v. ) | |
| MALIK M. DILLARD-CRIBBS, ) | RECOMMENDED DISPOSITION |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant, through counsel, has filed a Motion to Suppress evidence seized or statements made during a traffic stop. D.E. 169. Fully briefed (D.E. 181, 183, 184, 192) and the subject of an evidentiary hearing (D.E. 190), the Motion is ripe for review. Because no evidence whatsoever supports suppression, the Motion should be denied.

### FACTUAL BACKGROUND AND PROPOSED FINDINGS

Defendant faces a single charge of conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. D.E. 4. He has pled not guilty, and trial is scheduled to begin on January 23, 2018. D.E. 78, 128.

The facts are entirely undisputed. According to the government's briefing, on May 19, 2016, District Judge Amul Thapar authorized the interception of wire and electronic communications over a cell phone used by Brandon Woolum. D.E. 181 at 1. One intercept revealed a suspected source of supply using telephone number 510-637-8158. *Id.* Additional intercepts indicated the two were going to meet on May 26, 2016. *Id.* at 2. The DEA followed Woolum to a casino parking lot in Cincinnati, Ohio, and Woolum was surveilled briefly meeting

with someone driving a car registered to a "Malik M. Dillard-Cribs." *Id*. Further intercepts began on June 6, 2016, and indicated another meeting would soon occur near Lexington, Kentucky. *Id*. On June 7, 2016, Woolum was surveilled meeting, in Woolum's vehicle, with the driver of a maroon Dodge Durango for approximately thirty minutes. D.E. 169-1 at 1. The driver of the Durango returned to that vehicle and headed northbound on I-75. *Id*. The Durango was subsequently stopped, which stop is the subject of the defense's Motion.

Jeffrey Tyler Gaby, the Kentucky State Trooper that conducted the stop, was the lone witness at the suppression hearing. D.E. 189. He testified that he was contacted by a DEA task force officer and was asked if he could stop a newer, purple Dodge Durango and identify its driver. Audio Recording, Hearing on Nov. 27, 2017 (see D.E. 190) ("Hearing"), at 08:00. Gaby was located on the northbound onramp at exit 136 and, once he obtained the information specifying the vehicle in question, he observed the vehicle speeding and conducted the stop. *Id*. at 05:04. Gaby testified that, as a general matter, he would have used a radar device to detect the vehicle's speed, but did not recall specifically doing so in this instance or the speed it registered. *Id*. at 15:23. Gaby stated he informed the driver he was speeding, at which point the driver surrendered his driver's license and stated that he had a firearm in the vehicle and wanted Gaby to know it was there. *Id*. at 06:40; 07:14. Gaby does not recall whether the driver surrendered his license or revealed the firearm's existence first. *Id*. at 19:00. The driver was Defendant, Malik M. Dillard-Cribbs. At some point, Defendant provided Gaby with a concealed carry license for the firearm. *Id*. at 07:17; 11:53.

Defendant said the firearm was in the floorboard on the driver's side, and Gaby responded by asking if he could take control of the weapon. *Id*. at 06:56. Defendant consented to Gaby doing so. *Id*. at 07:00. During the stop, Defendant exited the vehicle and was patted

2

down by Gaby to see if he had more weapons. *Id*. at 08:37; 12:26. Gaby did not find additional weapons, but did locate a large sum of money in Defendant's pocket. *Id*. at 08:42; 12:42. Gaby testified that the purpose of the patdown was to see if Defendant had anything else that could be a danger. D.E. 08:51. Gaby asked Defendant about his trip that day, and Defendant responded that he had been to Radcliffe, Kentucky, to drop off his child with his girlfriend. Hearing at 07:31. Gaby identified Defendant, but did not write him a citation or search the vehicle, and Defendant drove away. *Id*. at 07:43; 15:05; 22:40. Gaby stated that the entire stop lasted only a matter of minutes, estimating that it lasted a total of 4-5 minutes. *Id*. at 18:18; 22:24.

On cross-examination, Gaby conceded that the stop probably would not have happened if the DEA had not requested him to assist in identifying the driver. *Id*. at 10:48. He further acknowledged the speed registered by his radar device was not included in his written report or the "field information report" he generated, but would only have been included if he had issued a citation for speeding. *Id*. at 10:24; 15:16; 15:36. Gaby did not advise Defendant of his *Miranda* rights or of the DEA's request for assistance. *Id*. at 11:06; 11:45. Gaby did not remove the money from Defendant's pocket, but surmised it was cash due to its feel after "manipulating" it. *Id*. at 12:44; 13:01. Gaby is not sure if he asked Defendant questions before or after he got out of the vehicle, but Defendant got back into the vehicle after Gaby took control of the firearm. *Id*. at 14:30.

## ANALYSIS

The Motion seeks to suppress Defendant's statement regarding the firearm he possessed, his statements describing the purpose of his trip to Kentucky that day, and any evidence of the cash Gaby located during the patdown. D.E. 183 at 1-2. The defense makes two arguments in support of its Motion. First, it argues that the stop and patdown were not justified under *Terry v.*

3

*Ohio*, 392 U.S. 1 (1968).  In its post-hearing brief, the defense emphasizes that the propriety of the stop and patdown are the "two main issues," and argues that, instead of the reasonable suspicion standard under *Terry*, probable cause did not support the stop  D.E. 192-1 at 2, 4-6.  Second, it argues that any incriminating statements Defendant made while subject to a "faulty detention" and without *Miranda* warnings must be suppressed.  No evidence supports any of these arguments.

First, the traffic stop complied with the Fourth Amendment.  A traffic stop qualifies as a "seizure" for purposes of the Fourth Amendment.  *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012).  "It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Id.*[1]  *See also* K.R.S. § 189.390-394 (defining speeding and scheduling fines for violations).  Probable cause concerns a common sense, totality of the circumstances assessment of the basis for an arrest or search.  *See, e.g., United States v. Torres-Ramos*, 536 F.3d 542, 554-55 (6th Cir. 2008).  A court must determine whether "'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (quoting *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)).  The standard requires "more than mere suspicion" but not "evidence to establish a prima facie case . . . much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998).  Importantly, the probable cause standard is objective.  "Subjective intentions play no role in probable cause Fourth Amendment analysis."  *Schneider v. Franklin County,* 288 F. App'x 247,

---

[1] The United States contends that *Terry* governs all traffic stops, D.E. 181 at 4-5, but *Jackson* sets forth two distinct bases for conducting them.

251 (6th Cir. 2008) (citing *Whren v. United States*, 116 S. Ct. 1769 (1996)). A stop for a civil traffic infraction, such as speeding, is permissible even if doing so is pretextual. *See United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008).

Here, the evidence is undisputed that Gaby stopped the Durango after observing that it was speeding. The defense criticizes Gaby for not specifically remembering whether he used a radar device to measure the vehicle's speed on that day, but his testimony that he observed the vehicle speeding is not contradicted in any way. The stop did not violate the Fourth Amendment.

Defendant's reliance upon *United States v. Tullock*, 578 F. App'x 510 (6th Cir. 2014) is misplaced. There, the basis for the traffic stop was that the suspect was "following too closely to the car in front of him." *Tullock*, 578 F. App'x at 511. Probable cause was lacking because the officer that conducted the stop did not specify "the objective facts that led [him] to form probable cause" and therefore the "substance" of his testimony was "simply insufficient." *Id*. at 514. Notably, he testified the weather was clear, the vehicle was not speeding, and the driver would not have to slam on his brakes to avoid hitting the leading car. *Id*. at 513. He could not recall anything about the speed of the vehicles, the distance between them, or how long the trailing vehicle was following too closely. *Id*. Those ambiguities do not exist with respect to the stop at issue in this case. Gaby testified Defendant was speeding, and that testimony is uncontested. True, Gaby did not recall the specific speed or whether he actually used a radar device to detect the speed. But, reason to believe a vehicle is speeding is far more cut-and-dry than assessing the violation of following too closely. This Court must credit Gaby's uncontested testimony that

5

Defendant was speeding, which establishes probable cause without having to assess the types of factual questions the Sixth Circuit was concerned with in *Tullock*.[2]

Second, the Motion vaguely alleges that Defendant was subjected to an illegal arrest. However, law enforcement may order a driver out of a vehicle as part of a routine traffic stop. *Arizona v. Johnson*, 555 U.S. 323, 331-32 (2009). And they may ask questions about the circumstances of the travel to put the traffic stop in context. *United States v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010). Gaby's instruction to Defendant to exit the vehicle after being informed of the presence of a firearm and questions to him about his travel on that day were entirely reasonable and consistent with these rules. Even a patdown is permissible upon reasonable suspicion that the driver or passengers may be armed or dangerous. *Johnson*, 555 U.S. at 331-32. The patdown was entirely justified once Gaby learned that Defendant had a firearm in the vehicle.

Moreover, "[a]n investigative *Terry* stop may indeed ripen into an arrest through the passage of time or the use of force." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814 (6th Cir. 1999). Multiple factors are to be assessed in determining whether this occurred. *United States v. Williams*, 170 F. App'x 399, 403 (6th Cir. 2006). The factors include "(1) transportation of the detainee to another location; (2) significant restraints on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of *Miranda* warnings." *Id*. There is no evidence supporting any of these factors. Defendant was briefly stopped in one location, was not restrained or coerced, was not subjected to force, and was not *Mirandized*. In sum, the brief detention was not an illegal arrest, but was instead a permissible traffic stop under the circumstances.

---

[2] Nor does the assessment of speeding require the detailed statutory analysis of child pornography at issue in *United States v. Pavulak*, 700 F.3d 651 (3d Cir. 2012).

6

In its post-hearing brief, the defense relies upon *United States v. Southard*, 20 F. App'x 304 (6th Cir. 2001) to argue that the patdown exceeded the permissible scope of such a search under *Minnesota v. Dickerson*, 508 U.S. 366 (1993). The search of Defendant is distinguished from both *Southard* and *Dickerson* in which evidence was actually seized due to the patdown. This was the Court's focus in Dickerson – "[t]he question presented today is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by *Terry*." *Dickerson*, 508 U.S. at 373. Here, Gaby did not seize the cash, so the issue concerns his potential testimony about his observations. The defense has offered no authority whatsoever that mere descriptions of his observations should be suppressed. Additionally, Gaby testified that what he meant by "manipulation" was what he felt "over [Defendant's] pants." Hearing at 13:12-16. He just felt the object "over the pants" to determine what it was, meaning through the pocket and pinching it without separating the bills and could tell it was loose money as opposed to a wallet. *Id*. at 13:28-14:00. This is distinguished from the "sqeezing, sliding, and otherwise manipulating the contents of the defendant's pockets" that was at issue in *Dickerson* and that the Court found exceeded the scope of a permissible patdown during a *Terry* stop. Thus, Gaby's search was analogous to the permissible "plain touch" search conducted in *Southard*.

Third, there was no *Miranda* violation because Defendant was not subjected to custodial interrogation. "Where a party seeks suppression of his statements based upon a failure to receive his *Miranda* warnings, he must demonstrate by a preponderance of evidence that he was entitled to receive them; *i.e.*, that he was subjected to a 'custodial interrogation.'" *United States v. Lawrence*, Nos. 88-2056, 88-2086, 88-2087, 88-2109, 88-2135, 1989 WL 153161, at *5 (6th Cir. Dec. 18, 1989) (citation omitted) (quoting *United States v. Charles*, 738 F.2d 686, 692 (5th Cir.

1984)). The Sixth Circuit has pointed to several factors to guide a court's analysis of whether an individual is in custody: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told she need not answer the questions." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).[3] None of these factors weigh in favor of a finding of custody. Defendant was questioned in public, for just a few minutes, was unrestrained, and was asked basic questions about his travel on that day. Defendant has failed to demonstrate that he was subjected to custodial interrogation.

## CONCLUSION

Based upon the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress (D.E. 169) be **DENIED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning the recommendations above, issued under subsection (B) of that statute. As defined by section 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this Recommended Disposition, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

---

[3] Advising that a subject does not have to answer questions is important, but not a necessary condition to a finding of a non-custodial setting. *Panak*, 552 F.3d at 467.

8

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**