UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|  | ) | Criminal No: 6:17-cr-38-7-GFVT |
| Plaintiff, | ) | |
|  | ) | |
| V. | ) | **MEMORANDUM OPINION** |
|  | ) | **&** |
| MALIK M. DILLARD-CRIBBS, | ) | **ORDER** |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the Magistrate Judge Hanly A. Ingram's Recommended Disposition (also known as a "Report and Recommendation," or "R&R") [R. 194] on the Motion to Suppress [R. 169] filed by Defendant Malik Dillard-Cribbs. In the R&R, the Magistrate Judge recommends that the Court deny Dillard-Cribbs's motion. [R. 194.]

**I**

The Magistrate Judge conducted an evidentiary hearing on the issues raised in Dillard-Cribbs's motion to suppress and supplemental pleadings and, thereafter, issued a written R&R wherein he recommends that Dillard-Cribbs's motion to suppress be denied. [R. 190; R. 194.] In his recommendation, the Magistrate Judge thoroughly set out his proposed findings of fact and conclusions of law. [R. 194.]

Dillard-Cribbs does not offer specific objections to the factual recitation provided in the R&R but does object to the Magistrate's application of the law to those facts. [R.

195.] Because Dillard-Cribbs does not specifically object to the Magistrate's proposed findings of fact, the Court adopts them and, for convenience, reprints them herein:

> [O]n May 19, 2016, District Judge Amul Thapar authorized the interception of wire and electronic communications over a cell phone used by Brandon Wollum. One intercept revealed a suspected source or supply using telephone number 510-637-8158. Additional intercepts indicated the two were going to meet on May 26, 2016. The DEA followed Wollum to a casino parking lot in Cincinnati, Ohio, and Wollum was surveilled briefly meeting with someone driving a car registered to a "Malik M. Dillard-Cribbs." Further intercepts began on June 6, 2016, and indicated another meeting would soon occur near Lexington, Kentucky. On June 7, 2016, Wollum was surveilled meeting, in Woolum's vehicle, with the driver of a maroon Dodge Durango for approximately thirty minutes. The driver of the Durango returned to that vehicle and headed northbound on I-75. The Durango was subsequently stopped [ ].
>
> Jeffrey Tyler Gaby, the Kentucky State Trooper that conducted the stop, was the lone witness at the suppression hearing. He testified that he was contacted by a DEA task force officer and was asked if he could stop a newer, purple Dodge Durango and identify its driver. Gaby was located on the northbound onramp at exit 136 and, once he obtained the information specifying the vehicle in question, he observed the vehicle speeding and conducted the stop. Gaby testified that, as a general matter, he would have used a radar device to detect the vehicle's speed, but did not recall specifically doing so in this instance or the speed it registered. Gaby stated he informed the driver he was speeding, at which point the driver surrendered his driver's license and stated that he had a firearm in the vehicle and wanted Gaby to know it was there. Gaby does not recall whether the driver surrendered his driver's license or revealed the firearm's existence first. The driver was Malik M. Dillard-Cribbs. At some point, Defendant provided Gaby a concealed carry license for the firearm.
>
> Defendant said the firearm was in the floorboard on the driver's side, and Gaby responded by asking if he could take control of the weapon. During the stop, Defendant exited the vehicle and was patted down by Gaby to see if he had more weapons. Gaby did not find additional weapons, but did locate a large sum of money in Defendant's pocket. Gaby testified that the purpose of the patdown was to see if Defendant had anything else that could be a danger. Gaby asked Defendant about his trip that day, and Defendant responded that he had been to Radcliff, Kentucky, to drop off his child with his girlfriend. Gaby identified Defendant, but did not write him a citation or search the vehicle, and Defendant drove away. Gaby

stated the entire stop lasted only a matter of minutes, estimating that it lasted a total of 4-5 minutes.

[R. 194 at 1-3 (citations to the record omitted).]

Although Dillard-Cribbs does not object to the above factual recitation, he does object to the Magistrate's legal conclusions. Before considering those objections, a synopsis of the Magistrate's conclusions provides some context. The Magistrate Judge ruled that the Kentucky State Trooper had sufficient probable cause to initiate a traffic stop of Dillard-Cribbs because Dillard-Cribbs did not contradict or contest that he was speeding. [*Id.* at 4-5.] The Magistrate also concluded that because no evidence was seized during the patdown search, there is nothing to suppress with regard to the patdown. [*Id.* at 7.] Thus, because the traffic stop was constitutionally sound and, regarding the contents of Dillard-Cribbs's pocket, nothing was actually seized, suppression is unwarranted.

Dillard-Cribbs timely objected to the R&R, challenging the Magistrate Judge's conclusions that (1) there existed probable cause to justify the traffic stop and (2) the trooper's observations are not suppressible because nothing was actually seized. [R. 195.] Dillard-Cribbs also seeks suppression of certain statements made by him during the stop as well as any statements by the trooper concerning what the trooper believed to be a large amount of cash in Dillard-Cribbs's pocket at the time of the traffic stop. [*See* R. 183.] The objections, in essence, ask the Court to review only the Magistrate's application of the law to the facts of this case. In response to Dillard-Cribb's objections, the Court has conducted a *de novo* review of the analysis, *see* 28 U.S.C. § 636(b)(1), and for the reasons set forth below, Dillard-Cribbs's Motion to Suppress [R. 169], as clarified by his Reply in Support of Motion to Suppress [R. 183], will be GRANTED.

**II**

The Fourth Amendment provides "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause. . . ." U.S. CONST. AMEND. IV. For Fourth Amendment purposes, a traffic stop "constitutes a seizure of persons." *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (internal citations omitted). A law enforcement officer may initiate a traffic stop when she "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). In Kentucky, speeding is a civil infraction as evidenced by its inclusion in the statutory scheme governing motor vehicles and traffic regulations, as opposed to the state's penal code. *See* KRS § 189.390. The exclusionary rule mandates suppression of seized evidence where an unlawful traffic stop occurs. *Lyons*, 687 F.3d at 763 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). As stated by the Magistrate Judge at the evidentiary hearing, while it is the defendant's motion, it is on the Government to establish the requisite burden of proof. [*See* R. 190, Audio Recording of Evidentiary Hearing at 24:24.]

On the one hand, where probable cause of a civil infraction supports a traffic stop, "an officer's subjective intent is irrelevant." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Whren*, 517 U.S. at 813). On the other hand, a stop based on reasonable suspicion of ongoing criminal activity – commonly referred to as a Terry stop – "must be supported by specific and articulable facts that would warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* at 750. A Terry stop "must be justified at its inception, and it must be reasonably related in scope to

the circumstances which justified the interference in the first place." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). The validity of a Terry stop is adjudged based on the totality of the circumstances. *Id.*

The Sixth Circuit has adopted the collective knowledge doctrine in reasonable suspicion traffic stop cases. *See Lyons*, 687 F.3d at 766. This doctrine allows an officer to stop a suspect vehicle at the request of another officer where the requesting officer has gathered and communicated some reasonable suspicion of ongoing criminal activity to the responding officer. *Id.* This imputed knowledge is allowed because courts understand officers often have limited time in which to act or respond in fast moving investigative environs. Nonetheless, the collective knowledge doctrine is not without its restrictions. "A traffic stop based on collective knowledge must be supported by a proper basis and must remain reasonably related in its scope to the situation at hand." *Id.*

## A

Based on the evidence presented, Trooper Gaby's traffic stop of Dillard-Cribbs was not supported by independent probable cause. When a traffic stop is to be supported by probable cause, an officer need only a "reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *Blair*, 524 F.3d at 748. In recent years, the Sixth Circuit has adopted an "objectively verifiable reason" test for determining whether an officer has probable cause to initiate a stop for a traffic infraction. *See United States v. Huff*, 630 Fed. App'x 471, 496 (6th Cir. 2015); *United States v. Tullock*, 578 Fed. App'x 510, 513 (6th Cir. 2014). In *Huff*, the Sixth Circuit stated:

> Probable cause does not require an actual finding of a violation, rather, a probability or substantial chance of criminal activity is all that is required. Police

5

> officers are able to make a stop if they have probable cause to believe that a traffic violation occurred, even if the stop is pretextual. Determining whether or not officers had probable cause requires a fact dependent analysis of what the officer knew at the time of the stop. The fact that an officer had an ulterior motive to make the stop, such as to investigate illegal drug activity, is constitutionally irrelevant. Subjective intentions and actual motivations of officers in traffic stops play no role in determining the constitutional reasonableness of traffic stops in a probable-cause Fourth Amendment analysis. *Therefore, the inquiry to be made by this court in determining if the traffic stop violated the Fourth Amendment is whether the officer had an objectively verifiable reason for pulling over Defendant's truck in light of all the facts and circumstances known to the officer at the time of the stop.*

*Huff*, 630 Fed. App'x at 471 (emphasis added) (citations omitted). While the Court recognizes that both *Huff* and *Tullock* deal with traffic stops for following too close, and the case at bar deals with speeding, the Sixth Circuit does not make that distinction in the guidance laid out in *Huff*.

The parties do not dispute that Trooper Gaby stopped Dillard-Cribbs following a request from a DEA Task Force Officer (TFO) to identify the driver. This ulterior motive, though, is irrelevant. *See Huff*, 630 Fed. App'x at 471. The Government argues that Trooper Gaby had "independent probable cause" to stop the vehicle. [R. 181 at 3.] In the Government's Response in Opposition, the United States asserts that Trooper Gaby observed Dillard-Cribbs's vehicle traveling "at a high rate of speed and in excess of the posted speed limit." [*Id.*] However, there is no objectively verifiable evidence before the Court to establish that Dillard-Cribbs was traveling at such a high rate of speed.

Trooper Gaby testified at the evidentiary hearing that he likely would not have even stopped the vehicle but for the request from the TFO to identify the driver. [R. 190, Audio Recording of Evidentiary Hearing at 10:47.] And, while Trooper Gaby testified that he "always uses his radar," he does not specifically recall using his radar to determine the speed at which Dillard-Cribbs was travelling. [*Id.* at 15:21.] While it is

6

true that the subjective intent of the officer is irrelevant, this testimony suggests the Dodge Durango was not traveling at such "a high rate of speed" as the Government suggests in its Response in Opposition. It is more likely that had the vehicle been traveling at such an excessive speed, Trooper Gaby would have stopped the vehicle regardless of the request from the TFO and memorialized that speed somewhere in a report, a citation, or a written warning. That is not the case here. There is no evidence before the Court of either the posted speed limit where Dillard-Cribbs was stopped or the speed at which Dillard-Cribbs's was travelling. There is no evidence before the Court to suggest Trooper Gaby had to speed in order to catch up with Dillard-Cribbs. There is no dash cam evidence that might support a finding of probable cause. There is only a conclusory statement from Trooper Gaby that Dillard-Cribbs's was speeding. The burden remains with the Government to prove probable cause existed, and the Court respectfully disagrees with the Magistrate that it was incumbent on Dillard-Cribbs to contradict or contest any evidence of speeding. The Court finds that Trooper Gaby has failed to provide sufficient objectively verifiable evidence to support a finding of independent probable cause to stop Dillard-Cribbs for speeding.

**B**

Similarly, the evidence does not support a showing of reasonable suspicion of ongoing criminal activity sufficient to justify a traffic stop of Dillard-Cribbs. As mentioned, reasonable suspicion can be established by a showing of "specific and articulable facts that would warrant a man of reasonable caution in the belief that the action taken was appropriate." *Blair*, 524 F.3d at 750. Stated another way, "the officer must be able to articulate more than an 'inchoate and unparticularized suspicion or

7

hunch' of criminal activity." *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *Terry*, 392 U.S. at 27)).

At the evidentiary hearing, Trooper Gaby testified as to the information relayed by the TFO. When asked what information he received from the TFO, Trooper Gaby responded, "That they were watching the vehicle. That they had, uh, that they had, uh, surveilled the vehicle, and, uh, they wanted it stopped to, uh, to identify the driver." [R. 190, Audio Recording of Evidentiary Hearing at 9:24.] Trooper Gaby testified that the TFO identified the vehicle to be stopped as a newer model purple Dodge Durango. [*Id.* at 9:40.] No evidence has been presented to suggest that Trooper Gaby had any other information regarding Dillard-Cribbs's involvement with ongoing criminal activity.

Based on the evidence presented, even the collective knowledge doctrine does not save the stop. The Sixth Circuit has adopted a three prong analysis as to whether the collective knowledge doctrine is applicable: "(1) the officer taking action must act in objective reliance on the information received; (2) the officer providing the information must have facts supporting the level of suspicion required; and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Lyons*, 687 F.3d at 767. Here, the analysis fails at the first prong.

Trooper Gaby received no information concerning ongoing criminal activity on which he could rely to establish reasonable suspicion. There is no evidence in the record that Trooper Gaby was told that Dillard-Cribbs had been potentially involved with a drug transaction or any other illegal activity. Trooper Gaby was not told to stop the car and look for anything specific, like drugs or firearms. He was merely asked to stop the vehicle and identify the driver. Trooper Gaby never testified or suggested he stopped

Dillard-Cribbs on a suspicion of drugs or drug conspiracy. In fact, Trooper Gaby testified only that he stopped Dillard-Cribbs for speeding and that he told Dillard-Cribbs that he was stopped for speeding. [R. 190, Audio Recording of Evidentiary Hearing at 6:30.] In a footnote, the Government contends probable cause existed to stop Dillard-Cribbs because of the DEA investigation. [R. 181 at 5, n.1.] However, this argument is not developed further, and no evidence concerning Trooper Gaby's knowledge of the DEA investigation was provided at the evidentiary hearing.

According to the evidence presented at the suppression hearing, information Trooper Gaby had concerning the DEA's investigation was limited only to the TFO having watched or surveilled the Dodge Durango Dillard-Cribbs was driving. Trooper Gaby did not articulate having received any other specific facts from the TFO regarding the underlying investigation. Based on the evidence before the court, any suspicion Trooper Gaby had concerning Dillard-Cribbs's involvement in a drug conspiracy would be nothing more than unparticualrized. *See Blair*, 524 F.3d at 750. According to the Sixth Circuit, such a hunch, or unparticularized suspicion, does not rise to the level of reasonable suspicion to support a traffic stop. *Id.* (holding that a requesting officer's knowledge of a hand-to-hand drug transaction does not satisfy the collective knowledge doctrine if such knowledge is only conveyed post-stop to the officer conducting the traffic stop).

The Government has failed to show that Trooper Gaby had any knowledge whatsoever of the underlying DEA investigation except that the TFO had watched or surveilled Dillard-Cribbs's vehicle. As such, without more, Trooper Gaby cannot

establish the requisite knowledge – individually or collectively – to support a finding of reasonable suspicion of ongoing criminal activity.

## III

Dillard-Cribbs's objections to the Magistrate Judge's R&R challenged the conclusions that (1) there existed probable cause to justify the traffic stop and (2) that the trooper's observations are not suppressible because nothing was actually seized. [R. 195.] Having determined that the traffic stop was not supported by probable cause of a civil infraction or reasonable suspicion of ongoing criminal activity, the Court need not address Dillard-Cribbs's second objection because suppression is warranted. Defendant Dillard-Cribbs seeks suppression of three things: (1) statements Dillard-Cribbs made to Trooper Gaby concerning his legal possession of a firearm; (2) statements Dillard-Cribbs made to Trooper Gaby concerning his travels to and from Radcliff, Kentucky, on June 7, 2016; and (3) any statements or observations Trooper Gaby has made or may make concerning an undetermined amount of cash in Dillard-Cribbs's pocket on the day of the traffic stop. [R. 183; R. 195.]

Having reviewed the Magistrate Judge's R&R, and the Court being otherwise sufficiently advised, it is **HEREBY ORDERED** as follows:

(1) Dillard-Cribbs's Motion to Suppress [R. 169] is **GRANTED**;

(2) Dillard-Cribbs's Objection to the Magistrate Judge's Report and Recommendation [R. 195] is **SUSTAINED**;

(3) The Magistrate Judge's Report and Recommendation [R. 194] will be **ADOPTED** as to the factual findings and legal standards unless otherwise stated above, but will be **OVERRULED** as to the conclusion;

(4) The trial date will remain as scheduled on April 9, 2018, as set in the Court's recent order. [R. 209.]

This the 16th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge