UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>MALIK M. DILLARD-CRIBBS,<br><br>Defendant/Movant. | No. 6:17-CR-38-REW<br>No. 6:19-CV-289-REW<br><br>OPINION AND ORDER |

\*\*\* \*\*\* \*\*\* \*\*\*

On December 3, 2019,[1] Defendant/Movant Malik M. Dillard-Cribbs, a federal inmate, filed a *pro se*[2] motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. DE #548 (Motion). The United States responded, *see* DE #556, and Dillard-Cribbs replied, *see* DE #559. The matter is ripe for decision. Upon thorough review, and for the reasons here discussed, the Court denies § 2255 relief and issues no certificate of appealability.

1. **Factual and Procedural Background**

On July 27, 2017, the grand jury returned an indictment charging Dillard-Cribbs (and nine others) with conspiring to distribute oxycodone pills, in violation of 21 U.S.C. §§ 841(a)(1) and 846, from approximately October 2010 through July 27, 2017 (Count I). DE #4 (Indictment). On

---

[1] The filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002) (per curiam). Dillard-Cribbs declared under penalty of perjury that he executed the § 2255 motion and placed it in the prison mailing system on December 3, 2019. *See* DE #548 at 12.

[2] The Court gives *pro se* filings a comparatively lenient construction. *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

1

Defendant's motion,[3] United States District Judge Gregory F. Van Tatenhove (then presiding over this case) subsequently suppressed statements concerning, and a Kentucky State Trooper's observations of, a firearm located in Dillard-Cribbs's vehicle during a traffic stop. DE #217 (Opinion & Order).[4] On August 2, 2018, Defendant pleaded guilty before the undersigned to Count I of the Indictment. DE #303 (Plea Agreement); DE #304 (Rearraignment Minutes). Per the Rule 11(c)(1)(B) plea agreement, Dillard-Cribbs admitted that he participated in the charged conspiracy between approximately May 2016 and July 2016 and was responsible for supplying at least one co-conspirator with an unspecified quantity of oxycodone 30 mg pills. DE #303 ¶¶ 3, 5.[5]

At the rearraignment hearing, the Court carefully covered all Rule 11 topics with Dillard-Cribbs. *See* DE #378 (Rearraignment Tr.). The Court first confirmed Defendant's competency to plead. *Id.* at 6–9. During the change-of-plea colloquy, Dillard-Cribbs affirmed, under oath, that he carefully read, discussed with counsel, and understood the entire plea agreement before signing it. *Id.* at 15. AUSA Dotson then summarized the relevant portions of the agreement on the record, and Defendant confirmed that the prosecutor's summary was accurate and complete. *Id.* at 17–19. In particular, AUSA Dotson emphasized that the "plea agreement contain[ed] the complete and only agreement between the U.S. Attorney's Office[] and the defendant[,]" and there had "been no other promises made by the government to" Dillard-Cribbs. *Id.* at 19. The Court then carefully confirmed that this was the case. *Id.* at 21 ("Mr. Dillard-Cribbs, is the plea agreement we've talked about the full and complete agreement you have with the government? Yes, Your Honor. Has the United States made any promises to you that are not included in the plea agreement? No, Your

---

[3] The Court here refers to Defendant/Movant as Defendant, for simplicity.
[4] Judge Van Tatenhove transferred this case to the undersigned on June 13, 2018. DE #258.
[5] Though the parties reached no drug quantity agreement, the United States promised not to argue for greater than an amount resulting in a base offense level of 26. *Id.* ¶ 5(b). Dillard-Cribbs remained free to argue for a lesser amount. *Id.*

Honor."); *see also id.* at 22 ("Other than what's contained in the plea agreement, sir, has anyone made any promises to you to get you to enter that agreement or to plead guilty today? No, Your Honor. Has anyone told you that if you plead guilty, there's a specific sentence that you will receive? No, Your Honor."). Next, the Court ensured that Dillard-Cribbs's decision to plead guilty was wholly voluntary, and it reviewed with Defendant his relevant constitutional and other rights, as well as the potential penalties applicable to Count I. *Id.* at 22–29. Finally, the Court discussed the factual basis for Defendant's plea and found, per Dillard-Cribbs's admissions in the plea agreement and in open Court, that an adequate factual basis supported the plea as to each essential Count I element. *Id.* at 35–41. Accordingly, the Court accepted Defendant's guilty plea as knowing, voluntary, and intelligent and adjudged him guilty of Count I. *Id.* at 42. The hearing included a full description of the sentencing process. *Id.* at 26–32.

On November 26, 2018, Defendant initially appeared for sentencing. *See* DE #551. At the outset of the hearing, the defense informed the Court that it was not prepared to go forward with sentencing because of a misunderstanding concerning the Presentence Investigation Report's (PIR) application of a two-point firearm enhancement under USSG § 2D1.1(b)(1).[6] *Id.* at 3. Per defense counsel's explanation, an earlier draft of Defendant's plea agreement contained a concession that the enhancement properly applied in this case, but the Government ultimately agreed to omit the concession in order to secure Dillard-Cribbs's plea. *Id.* at 3–4. As both sides recognized and as the record unequivocally reflects, the plea agreement into which Defendant actually entered is silent on the firearm topic. *Id.* at 5–6; *see also* DE #303 (Plea Agreement).

---

[6] The Government did not object to the PIR's inclusion of the enhancement. Defendant did object, and the United States Probation Office (USPO) responded in support of the enhancement. *See* DE #545 (PIR) at 28–32 (Addendum). As reflected in the PIR, application of the § 2D1.1(b)(1) enhancement rendered Defendant ineligible for safety-valve relief under USSG § 5C1.2 and 18 U.S.C. § 3553(f).

Defense counsel interpreted that silence—and explained it to Dillard-Cribbs—as the Government's promise not to argue for the enhancement at sentencing. *Id.* at 3. Per counsel, Dillard-Cribbs expected that the Government would not seek § 2D1.1(b)(1) enhancement. *Id.* The United States, however, understood removal of the enhancement concession as neutrally preserving the issue as an advocacy point for both sides; per the Government, there simply was no agreement between the parties as to enhancement application, and each side remained free to argue its respective position at sentencing. *Id.* at 6–7. The defense requested, and the Court granted, a two-week continuance to permit Dillard-Cribbs time to decide whether to move to withdraw his plea. *Id.* at 5, 8. The Court advised that it would grant plea withdrawal only upon an adequate Rule 11(d)(2) showing. *Id.* at 8–9.[7]

Despite opportunity, Dillard-Cribbs did not move to withdraw his plea, and the Court and parties reconvened for sentencing on December 18, 2018. *See* DE #555 (Sentencing Tr.). Both the United States and Defendant assured that they were prepared to proceed with sentencing at that time. *Id.* at 3. Dillard-Cribbs argued against application of § 2D1.1(b)(1);[8] the Government argued in favor of the enhancement and called a supportive witness. *Id.* at 8–29. Considering the evidence and applying the appropriate standards, the Court overruled Defendant's objection, finding that the enhancement properly applied and that Defendant was therefore ineligible for safety-valve

---

[7] The Court further noted that it had conducted a careful plea colloquy with Dillard-Cribbs, per Rule 11, and would have probed any indication of an extra-plea promise, had there been one. *Id.* at 9 (". . . I always have a very careful plea colloquy. I'm confident that the record will prove . . . that I would have asked Mr. Dillard-Cribbs if there were any promises inducing his plea outside of the plea agreement. And if he had said yes, we would have drilled down into that. And so I'm assuming he said no.").

[8] At the start of the hearing, the defense withdrew an objection to the drug quantity attributed to Dillard-Cribbs in the PIR. *Id.* at 6–8. The Court confirmed that it was Dillard-Cribbs's intent not to pursue the objection. *Id.*

relief.[9] *Id.* at 29–32. The Court thus adopted the PIR and, after hearing the parties' § 3553(a) arguments and Defendant's allocution, varied downward and imposed a below-guidelines sentence of 48 months' imprisonment. DE #443 (Judgment); *see also* DE #442 (Sentencing Minutes). No appeal followed.

In November 2019, Dillard-Cribbs submitted two *pro se* filings. First, Defendant sought relief under Section 404 of the First Step Act (Pub. L. No. 115-391, 132 Stat. 5194 (2018)), *see* DE #544; second, he asked the Court to remove the two-level firearm enhancement and direct the BOP to deem him eligible for early release upon Residential Drug Abuse Program (RDAP) completion, *see* DE #546. The Court denied both relief requests for the reasons thoroughly detailed in DE #547, but directed the Clerk to provide Dillard-Cribbs blank § 2255 and § 2241 forms, to the extent he intended to seek collateral relief. DE #547 at 5. Dillard-Cribbs timely filed the instant § 2255 motion on December 9, 2019, alleging ineffective assistance of counsel (IAC). DE #548. Defendant argues that defense counsel misadvised him concerning the consequences of pleading

---

[9] Defendant's central arguments against enhancement application were: (1) that the Court previously suppressed evidence of the firearm; and (2) that Defendant was legally licensed to carry a firearm at the time of the traffic stop. As the Court noted, both arguments fail, per Sixth Circuit authority, under the facts and circumstances of this case. *See, e.g., United States v. Carmack*, 426 F. App'x 378, 383–84 (6th Cir. 2011) ("Carmack concedes that this court in *United States v. Jenkins*, 4 F.3d 1338 (6th Cir. 1993), held that a district court may consider improperly seized evidence, though inadmissible at trial, to enhance a defendant's sentence, so long as the evidence was not seized for the purpose of enhancing the defendant's sentence."); *United States v. Pryor*, 842 F.3d 441, 453 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 2254 (2017) ("Pryor was arrested with the proceeds on him in the car while departing from the location of a drug transaction. While it is possible that Pryor happened to be carrying his legally licensed firearm with him without any connection to the conspiracy, it is just as likely (if not far more so) that he brought the gun to protect himself and his trade . . . This possibility is insufficient to show that the connection to the offense was clearly improbable."). The Court found, by a preponderance of the evidence, that the weapon was present during a drug transaction that was part of the instant conspiracy, and Dillard-Cribbs did not carry his burden of demonstrating clear improbability that the weapon was connected to the drug offense. That sequenced burden is the § 2D1.1(b)(1) rubric. *See, e.g., United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019).

guilty; specifically, Dillard-Cribbs contends that he decided to plead guilty (and, later at sentencing, chose not to contest the drug quantity attributed to him in the PIR)[10] based on counsel's promise that he would not receive (or that the Government would not pursue) a firearm enhancement. In response, the United States provides an affidavit from Dillard-Cribbs's trial counsel, Hon. John Paul Rion. DE #558-1 (Rion Aff.). Dillard-Cribbs has waived attorney-client privilege as to the communications necessary to litigate the ineffective assistance claims raised in his § 2255 motion. *See* DE #556 (Order); DE #557 (Notice of Waiver).

2. **Legal Framework**

*§ 2255 Review Standard*

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351

---

[10] Defendant states, in part: "My lawyer told me that if I did not argue the Drug Amount with the prosecutor they would not push for the gun enhancement which was the only reason I didn't argue the Drug Amount. My decision was based on the inducement he told me in expectation of a lighter sentence." DE #548 at 4. Defendant then proceeds to argue that "[c]ounsel's misrepresentation as to the consequences of [ ] entering a plea" render the plea invalid. *Id.* Defendant's reply focuses initially on plea validity. Though Defendant clearly argues that counsel provided ineffective assistance by misrepresenting the consequences of pleading guilty, it is not entirely clear whether he also intends to argue that his lawyer later misadvised him to withdraw the sentencing challenge to the PIR's drug quantity by inaccurately promising that he would not receive the firearm enhancement if he did so. In context, considering the plea agreement's lack of agreement concerning drug quantity and Defendant's withdrawal of the quantity challenge at sentencing, it is (at least) plausible that Defendant means to advance the latter theory as well. Given the comparatively lenient construction accorded *pro se* pleadings, the Court considers both arguments.

6

(6th Cir. 2001))). A defendant alleging a constitutional basis (as here) must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721–22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

*Ineffective Assistance – Strickland Standard*[11]

A movant claiming IAC must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). To prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective

---

[11] Per his plea agreement, Defendant waived all appellate and collateral attack rights, except claims of ineffective assistance of counsel. DE #303 at 3, ¶ 7.

standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064–65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 104 S. Ct. at 2066.

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must consider the "totality of the evidence before the judge or jury." *Id.* at 2069. Particularly, "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985)). "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 104 S. Ct. at 2069). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," which the Supreme Court has recognized "will often be so, that course should be followed." *Id.* (quoting *Strickland*, 104 S. Ct. at 2069)**.**

Such an approach is apt here. Even accepting that counsel provided *Strickland*-level deficient performance by (1) misadvising Dillard-Cribbs regarding the consequences of his plea agreement, namely, as to continued applicability of the firearm enhancement and (2) erroneously advising Defendant that, if he withdrew his objection to the PIR's drug quantity at sentencing, the Government would not argue in favor of the firearm enhancement, these arguments fail at the

prejudice step of the *Strickland* analysis. Because Defendant cannot establish that, but for these errors (assuming they were such), he would not have pleaded guilty or the outcome of sentencing would have been different, he cannot show that counsel provided constitutionally ineffective assistance per *Strickland*. Defendant's claims "cannot be accepted as true because they are contradicted by the record[;]" even assuming that the events occurred precisely as Defendant alleges, the record conclusively establishes that Dillard-Cribbs is legally entitled to no relief and, thus, no evidentiary hearing is required to resolve either argument raised in the instant motion. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (citation omitted); *see also* 28 U.S.C. § 2255(b) (requiring a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

3. **Analysis**

*IAC Claim #1: Plea Validity*

Dillard-Cribbs's primary claim is that he did not knowingly and voluntarily plead guilty because he acted based on his attorney's inaccurate advice regarding the firearm enhancement. As noted, the Court accepts as factually true that counsel misadvised Dillard-Cribbs concerning enhancement applicability. However, the terms of Dillard-Cribbs's plea agreement, his own statements under oath at the rearraignment hearing, and—perhaps most critically—his decision not to seek plea withdrawal *even after* counsel admitted error all undermine Defendant's claim that he pleaded guilty in reliance on counsel's erroneous advice.

First, the plea agreement itself and the thorough Rule 11 plea colloquy demonstrate that the Court cured any misunderstanding Defendant had, based on counsel's prior erroneous advice, concerning the plea agreement's terms and consequences *before* Dillard-Cribbs pleaded guilty; the rearraignment transcript undercuts Defendant's claim that misunderstanding of plea terms and

9

consequences induced him to plead. The plea agreement expressly provides: "This document and the supplement[12] contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. *The United States has not made any other promises to the Defendant.*" DE #303 at 3, ¶ 10 (emphasis and footnote added). Defendant's signature appears on the following page. *See id.* at 4. During the plea colloquy, the Court confirmed that Defendant read, fully understood, and signed the agreement:

> THE COURT: Mr. Dillard-Cribbs, you did sign the plea agreement?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Did you read the entire document before signing it?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Did you discuss the entire document with your counsel?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you understand the entire document?
> THE DEFENDANT: Yes, to my understanding of it.
> THE COURT: Is there anything you feel like you don't understand about it?
> THE DEFENDANT: I understand everything.

DE #378 at 15. Later, the prosecutor carefully (and accurately) summarized the plea agreement, including ¶ 10:

> MR. DOTSON: . . . This plea agreement contains the complete and only agreement between the U.S. Attorney's Offices and the defendant. *There have been no other promises made by the government to him.* . . . And finally, Mr. Dillard-Cribbs and his attorney acknowledge that he understands the agreement, that it's been fully explained to him, and that he's entered into this agreement voluntarily.

*Id.* at 19. Dillard-Cribbs acknowledged the accuracy of AUSA Dotson's summary, and he again confirmed that he understood the full agreement:

> THE COURT: Mr. Dillard-Cribbs, is that an accurate summary of your agreement?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Is there anything he said that surprised you?
> THE DEFENDANT: No, Your Honor.

---

[12] In this District, every plea agreement contains a supplement solely addressing cooperation, regardless of whether a defendant elects to cooperate or not.

*Id.*

Further, the Court specifically asked—several times and in multiple ways throughout the hearing—whether Defendant's decision to plead guilty rested on any promise or expectation not contained in the plea agreement itself:

> THE COURT: . . . Mr. Dillard-Cribbs, is the plea agreement we've talked about the full and complete agreement you have with the government?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Has the United States made any promises to you that are not included in the plea agreement?
> THE DEFENDANT: No, Your Honor.

*Id.* at 21.

> THE COURT: . . . Other than what's contained in the plea agreement, sir, has anyone made any promises to you to get you to enter that agreement or to plead guilty today?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Has anyone told you that if you plead guilty, there's a specific sentence that you will receive?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Has anyone threatened you or in any way forced you to enter the plea agreement or to enter a plea today?
> THE DEFENDANT: No, Your Honor.

*Id.* at 22. As the record reflects, Dillard-Cribbs confirmed each time, without hesitation, that no promise or sentencing expectation outside of the plea agreement influenced his decision to plead guilty.

Finally, the Court reiterated to Dillard-Cribbs—again, before he entered his guilty plea—that neither the Court, counsel, nor Defendant could possibly know the ultimate sentence at the rearraignment stage; the Court specifically instructed him not to plead guilty based on any expectation of a particular sentence. *See id.* at 26 (Before reviewing the statutory maximum penalties, the Court cautioned Dillard Cribbs: "As I told you, I can't know what the sentence is going to be today. Your lawyer can't know. The prosecutor doesn't know. The sentence comes at

11

the end of the process that involves multiple steps, a lot of people, a lot of investigation and an adversarial hearing. What I can tell you today is the worst case scenario, the maximum you could get. I'm not at all saying you will get the maximum, but it's possible."); *id.* at 30 ("More about the sentencing process. And I'm stressing this just because it is so important to keep in mind, Mr. Dillard-Cribbs. I can tell you general things like the maximum, but I can't tell you the details of your sentence because I don't know yet. Neither does your lawyer. And so if we don't know, you can't know either."); *id.* at 31 ("Don't count on any particular guideline range as being your sentence. Do you understand that? Yes, Your Honor."); *id.* at 32 ("Don't make a decision to plead guilty today based on what you think the guideline range will be, because you don't know and I don't know. So don't make a determination based on something that nobody can know today. Do you understand that? Yes, Your Honor."). The Court thus made abundantly clear that neither it, nor Defendant's lawyer, could guarantee any guideline range specifics, and Defendant confirmed under oath that he was not deciding to plead guilty based on any sentence-related expectations.

Defendant's sworn statements during the detailed plea colloquy, directly denying (in various ways) the existence of extra-plea promises or expectations, "constitute a formidable barrier" to § 2255 relief. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). "Solemn declarations in open court carry a strong presumption of verity." *Id.* The plea agreement was entirely silent as to firearm enhancement applicability. Not only did Dillard-Cribbs have ample opportunity to disclose any additional expectation he had concerning the enhancement, he had an *obligation* to disclose such (if it existed) in response to the Court's direct questioning on the topic. The Court's thorough inquiries and clear direction that Dillard-Cribbs should not plead guilty based on any sentencing prediction, coupled with Defendant's unequivocal assurance that he was, in fact, *not* pleading guilty based on such a promise or expectation, belie his claim of plea invalidity. "[W]here

12

the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (internal quotation marks and citation omitted). Indeed, "where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court[.]" *Id.* Dillard-Cribbs does not allege that anything—such as a threat or coercion—prevented him from revealing his expectation concerning the firearm enhancement during the rearraignment hearing. In short, the hearing transcript shows that Defendant understood the agreement to be limited to the promises contained in the document itself, as outlined on the record in open court.

The Court's careful Rule 11 colloquy, per the record, cured any pre-plea misunderstanding Dillard-Cribbs had regarding plea consequences. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (noting that a "proper colloquy can be said to have cured any misunderstanding [the defendant] may have had about the consequences of his plea[]" and collecting supportive cases). In other words, "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Id.* (emphasis in original). The Court specifically addressed—and, per Dillard-Cribbs's responses during the plea colloquy, dispelled—any incorrect notion that the guidelines, or other sentencing details not in the plea agreement, could be predicted or guaranteed at the time of pleading. "[W]hen a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when the court specifically informed him that his counsel's advice was incorrect." *Id.* (citing *Warner v. United States*, 975 F.2d 1207,

1212 (6th Cir. 1992)). The record establishes that Dillard-Cribbs knew, at the time he pleaded guilty, that the only plea agreement terms were those expressly included in the document itself and outlined on the open record, and that there were no guarantees about his guidelines or ultimate sentence. Defendant, so aware, nevertheless voluntarily pleaded guilty; his arguments do not legitimately impugn plea validity.

Nor could an argument that Dillard-Cribbs's *subjectively* persisting expectation—despite pre-plea cure, in an objective sense, of any misunderstanding based on counsel's mistaken advice—be sufficient to demonstrate prejudice in this scenario. *See id.* at 566 ("If we were to rely on Ramos's alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless[.]"). Moreover, *even if* Defendant's persisting, inaccurate subjective expectation were relevant to the prejudice calculus, his own actions demonstrate that it would not have caused (and, in fact, did not cause) him to insist upon proceeding to trial. Critically, the Court in fact gave Dillard-Cribbs an express opportunity to seek plea withdrawal after learning about counsel's earlier mistake. Upon defense counsel's request for a sentencing continuance because of the precise misunderstanding Defendant now cites, the Court explained the standards governing plea withdrawal, continued Defendant's sentencing from November 26, 2018 to December 18, 2018, and set a specific deadline for Dillard-Cribbs to move to withdraw his plea, if he wished to do so. *See* DE #432 (Minutes); DE #551 (Tr.). Defendant did not seek to withdraw his plea at any time. Notably, Dillard-Cribbs does not allege that he desired withdrawal and counsel simply ignored or rejected his wishes, or that counsel misadvised him concerning his plea withdrawal opportunity. As the sentencing transcript reflects, Dillard-Cribbs appeared for sentencing on December 18 and confirmed readiness to proceed, after declining to move to withdraw his plea. *See* DE #555 at 3–5. Accordingly, given Defendant's own decision not to move for plea

14

withdrawal, he cannot now show by a preponderance that, but for counsel's earlier error, he would have insisted upon having a trial. *See Campbell*, 686 F.3d at 357. Indeed, Dillard-Cribbs does not allege anything to the contrary. The record, rather, conclusively shows that Defendant did *not* so insist, even when offered an explicit opportunity to seek a return to pre-plea status. For these reasons, Dillard-Cribbs has not shown that his guilty plea is invalid or was the result of counsel's ineffective assistance for § 2255 purposes.

The following additional points: The Plea Agreement evolution is telling. By the time of the plea, the Agreement no longer included Defendant's agreement to the two-point firearm enhancement under § 2D11(b)(1). The negotiation removed an adverse stipulation by the defense on the issue. The Agreement thus contained non-binding recommendations the parties agreed to, but it expressly reserved all other matters (including drug quantity) for objection or argument. *See* DE #303 ¶ 5. Plainly, then, the document's neutrality would not have supported Dillard-Cribbs's stated expectations.

Critically, the reply shows that Defendant's focus is the firearm's effect on RDAP eligibility, an understandable concern. He claims his lawyer should have secured elimination of reference to the firearm in the PIR. *See* DE #559 (Reply) at 2. Sentencing is a process. A lawyer can object to a presentence report, but he cannot blot out facts or reality. Dillard-Cribbs's lawyer did object, on both quantity and firearm issues. The Court has the ultimate role of determining the guidelines calculation, and the Court did that here after the USPO made its report and the parties tested it via exception. The Court covered this process fully at rearraignment. *See* DE #378 at 26–32.

Finally, and simply put, Dillard-Cribbs does not claim the key causal argument—he does not actually contend that he would not have pleaded guilty if he had more clearly understood the

role of the gun.[13] *See, e.g.*, *Hill*, 106 S. Ct. at 371 (finding that the petitioner could not establish prejudice under *Strickland* where he "did not allege in his habeas petition that, had counsel" not misadvised him, "he would have pleaded not guilty and insisted on going to trial"). While Defendant wants the firearm removed as an issue, he does not claim that he would have persisted in a not guilty plea on correct or better advice. That he determined to forgo a plea withdrawal effort plainly bolsters this observation. If any Rion misadvice[14] survived to the point of the plea (doubtful, given the colloquy), Defendant has not linked that misadvice to the consummation of the plea. Thus, he gets no relief via § 2255.

*IAC Claim #2: Withdrawal of PIR Objection*

Liberally construing Defendant's petition and endeavoring to actively interpret its arguments toward an allegation stating relief, *see Franklin*, 765 F.2d at 84–85, the Court briefly considers Defendant's claim, to the extent he makes one, that counsel convinced him to withdraw his objection to the PIR's attributed drug quantity by advising that the Government "would not push for the gun enhancement." DE #548 at 4. The Court accepts Defendant's version of events and assumes that counsel did provide such erroneous advice, causing Dillard-Cribbs to withdraw the quantity objection, and that counsel's assistance thus constituted deficient performance under the first *Strickland* prong. Per the record, Defendant still cannot show prejudice, as required to succeed on an IAC claim, for two cascading reasons.

---

[13] The Government's argument also has problems, suggesting that an open plea would not have resulted in acceptance credit. *See* DE #558 at 7. The Court is not aware of any legal theory that would support this position.

[14] Rion's posture is a jumble. He conceded his own misperception, at the time of the plea, during the first sentencing hearing attempt. *See* DE #551 at 3–5. However, his later affidavit confusingly contradicts that concession, though in the context of sentencing. The lawyering was problematic, but the Court ultimately does not see harm on this record.

First, even if Defendant had maintained the quantity challenge at sentencing, it would have failed, and the sentencing outcome would have remained the same; a preponderance of reliable evidence in the record supports the drug quantity range originally and ultimately attributed to Defendant in the PIR. "[T]he Rules of Evidence do not apply at sentencing hearings." *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013). Rather, "[t]he key question is reliability." *Id.* A sentencing court may consider any sufficiently reliable information, regardless of whether it would be admissible evidence at a trial. *Id.* The PIR attributes to Dillard-Cribbs a quantity of 2,700 30mg oxycodone pills. DE #545 ¶ 57. The USPO based this quantity on three separate transactions between Dillard-Cribbs and Co-Defendant Brandon Woolum, each including approximately 900 30mg oxycodone pills. *Id.* Per his plea agreement, Dillard-Cribbs agreed that he supplied 30mg oxycodone pills to Woolum on at least one occasion. DE #303 ¶ 3(b). Woolum, in his plea agreement, further admitted that he obtained 900 30mg oxycodone pills from Dillard-Cribbs on at least three separate occasions. DE #306 ¶ 3(c). Additionally, phone calls intercepted by the DEA, with Court wiretap permission, revealed three meetings between Woolum and Dillard-Cribbs, each for the apparent purpose of exchanging drugs. *See* DE #545 at ¶¶ 25–27. During the second planned exchange, DEA surveillance revealed Woolum briefly meeting with someone in a vehicle registered to Malik M. Dillard-Cribbs at the expected location, a Cincinnati, Ohio casino (roughly the same location as the prior planned meeting), per the intercepted communications. *Id.* ¶ 26. During the third planned meeting, DEA agents surveilled Woolum to a Lexington, Kentucky Walmart parking lot, where they observed him meet with Dillard-Cribbs for approximately 30 minutes. *Id.* at 27. After leaving the exchange, Kentucky authorities stopped Dillard-Cribbs's

vehicle for a perceived traffic violation and, during the stop, discovered a large sum of cash on Dillard-Cribbs's person. *Id.* at 27–28.[15]

These pieces of reliable information—DEA communication interceptions between Woolum and Dillard-Cribbs, DEA personal surveillance of the pair, Kentucky police statements concerning a temporally-related traffic stop, and both Woolum's and Dillard-Cribbs's plea agreements—collectively support, by a preponderance of the evidence, the drug quantity of 2,700 30mg oxycodone pills attributed to Dillard-Cribbs in the PIR. The noted facts consistently and reliably suggest that Dillard-Cribbs in fact met with Woolum on three separate occasions (twice at or near the casino in Cincinnati, and once at the Walmart in Lexington) during the conspiracy period and supplied Woolum with 900 30mg oxycodone pills on each occasion. Accordingly, given the record's clear support for the PIR's identified quantity, any objection to the amount attributed to Defendant would have failed. Dillard-Cribbs thus cannot now show that, but for any mistaken advice from counsel to withdraw the quantity objection, the outcome of his sentencing proceeding would have differed. *See Strickland*, 104 S. Ct. at 2066.

Additionally, and importantly, Defendant—once he realized at sentencing, after he withdrew the quantity objection, that the United States still intended to argue in favor of the firearm enhancement—did not raise the issue for the Court. Defendant necessarily learned of counsel's mistaken advice before the Court finished considering and resolving PIR objections, and before the Court adopted the PIR's factual findings. Still, he did not seek to reinstate his quantity objection. Such failure fundamentally weakens his current allegation that, but for counsel's erroneous direction to withdraw the quantity objection (based on an expectation that the

---

[15] Despite Judge Van Tatenhove's suppression of statements concerning the cash located on Dillard-Cribbs, *see* DE #217 at 10, the Court was free to consider the information in the sentencing context. *See, e.g.*, *Carmack*, 426 F. App'x at 383–84 (discussing *Jenkins*, 4 F.3d at 1338).

Government would not pursue the firearm enhancement), he would have elected to argue it at sentencing. *Cf. Baker*, 781 F.2d at 90 (discussing unwritten sentencing expectations, in the plea context, and observing: "We note additionally that once it became clear at the sentencing hearing that the government did not intend to stand mute, it would have been reasonable for defendant, who was present and represented by counsel, to object if the agreement did indeed consist in part of this promise. No objection was raised, however . . . The defendant's failure to object to the government's statement at sentencing constitutes waiver in this situation.").

In sum, Dillard-Cribbs has not shown by a preponderance of the evidence that he even intended to and would have in fact argued the quantity objection, but for counsel's alleged erroneous advice, much less that such an objection would have been successful and altered the outcome of the sentencing proceeding. Accordingly, this claim of ineffectiveness too fails at the second *Strickland* step, as Dillard-Cribbs cannot demonstrate that counsel's mistake prejudiced him.

### 4. Certificate of Appealability

As discussed in detail, no hearing is needed to resolve the instant motion because "the files and records of the case conclusively show that [Dillard-Cribbs] is entitled to no relief." 28 U.S.C. § 2255(b). The record, which requires no further development, forecloses relief as to both of Defendant's claims for the reasons thoroughly discussed.

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard).

The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Movant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* claims conclusively fail, as here outlined in detail. Reasonable jurists would not find the Court's determination debatable.

5. Conclusion

Accordingly, the Court **DENIES** Defendant's § 2255 motion in full and issues no certificate of appealability as to the raised issues.

This the 30th day of March, 2020.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge